EMPLOYMENT SECURITY COMM. v. PEACE

[122 N.C. App. 313 (1996)]

EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA,
Appellant/Respondent v. WILLIAM PEACE, Appellee/Petitioner

No. COA94-1283

---

EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA, Appellee-
Respondent, v. WILLIAM H. PEACE, III, Appellant-Petitioner.

No. COA95-678

(Filed 7 May 1996)

1. **Public Officers and Employees § 67 (NCI4th)— state employee's obtaining coffee without permission— employee's filing of criminal charge—dismissal without just cause—sufficiency of evidence to support findings**

   The evidence was sufficient to support the findings of the Personnel Commission, and its findings were sufficient to support its conclusions that petitioner, a permanent state employee, was not dismissed for just cause and should be reinstated where the evidence tended to show that petitioner, in good faith, believed his membership in the office petty fund allowed him to obtain coffee from the personnel file room, which he did; when a supervisor in the personnel office told petitioner he should pay for the coffee, petitioner refused; the supervisor called petitioner despicable, told him she hoped he was fired, and told petitioner that, if he got another cup of coffee without paying, she would get a cup of coffee and scald him with it; petitioner had the right to seek protection from potential bodily harm by taking his complaint to the proper judicial officials, even if the charge was dismissed as frivolous by the trial court; and petitioner was not contacted by his superiors regarding the incident until he received a predismissal conference memorandum the day before his dismissal conference, after which he was dismissed for unacceptable personal conduct.

   **Am Jur 2d, Civil Service § 63.**

2. **Public Officers and Employees § 66 (NCI4th)— termination for good cause—burden of proof on employer**

   The Personnel Commission properly required the employer, the Employment Security Commission, to carry the burden of proving petitioner was terminated for good cause.

   **Am Jur 2d, Civil Service § 61.**

Appeal by respondent from order entered 12 August 1994 by Judge Narley L. Cashwell in Wake County Superior Court and appeal by petitioner from order entered 13 March 1995 by Judge Wiley F. Bowen in Wake County Superior Court. Heard in the Court of Appeals 19 March 1996.

*Attorney General Michael F. Easley, by Chief Deputy Attorney General Andrew A. Vanore, Jr., and Assistant Attorney General Valerie Bateman, for North Carolina Department of Justice; and Chief Counsel T.S. Whitaker and Attorney Fred R. Gamin, for North Carolina Employment Commission, respondent appellant-appellee.*

*Hilliard & Jones, by Thomas Hilliard, III, for petitioner appellant-appellee.*

SMITH, Judge.

Petitioner, William H. Peace, III, appeals a superior court order reversing a State Personnel Commission decision which reinstated petitioner as an employee of respondent, the Employment Security Commission of North Carolina ("ESC"). ESC appeals a superior court order affirming an Office of Administrative Hearing ("OAH") decision finding a Title VII violation and reinstating petitioner. After carefully reviewing the record, we agree with petitioner's contention that ESC has failed to show that it dismissed petitioner with just cause. Therefore, we affirm the decision of the State Personnel Commission reinstating petitioner. For reasons stated herein, we do not address the merits of ESC's appeal.

William H. Peace, III, began his employment with respondent on 15 October 1985 as its Equal Employment Opportunity ("EEO") officer. On 10 April 1991, an incident between Peace and a coworker occurred which ultimately led to Peace's dismissal for alleged unacceptable personal conduct. The State Personnel Commission adopted, *inter alia*, the following facts as recommended by the Administrative Law Judge ("ALJ"): During his 1985 orientation, petitioner was informed that by paying $2.00 per month to the Personnel Office petty fund, he would be entitled to obtain an occasional cup of coffee from a pot located in the personnel file room. He paid the dues; however, his usual practice was to go to the agency's cafeteria for morning coffee. Prior to 10 April 1991, no one informed petitioner that his payment into the petty fund did not entitle him to obtain coffee from the personnel file room. Over the years, on an irregular

basis, he obtained coffee from the petty fund coffee pot. At a staff meeting which petitioner did not attend, a coffee fund was established, for which membership dues were $3.40 per month. Petitioner was not made aware of a separate coffee fund, nor was he asked to join.

On 10 April 1991, petitioner got a cup of coffee from the personnel file room. As petitioner was leaving the office with the coffee an exchange between him and Ms. Catherine High, a supervisor in the personnel office, took place in which she told him that he should pay her for the coffee. Petitioner refused. Ms. High called petitioner "despicable" and told him she hoped he was fired. She ended the colloquy by telling petitioner that, if he got another cup of coffee and did not pay her, she would get a cup of coffee and scald him with it. Ms. High informed her supervisor and Mr. Gene Baker, who became petitioner's immediate supervisor as of 22 April 1991, of the incident.

On the afternoon of 10 April 1991, petitioner contacted the magistrate's office regarding the incident with Ms. High. He was informed that if he believed she was capable of carrying out her threat, he should take out a warrant against her. Petitioner spoke with Ms. High following his conversation with the magistrate's office, at which time he gave her an opportunity to apologize. Ms. High did not apologize. Thereafter, petitioner had the magistrate's office issue summons against Ms. High charging her with communicating a threat. The charge was dismissed by the trial court as frivolous and petitioner was ordered to pay court costs.

Petitioner was not contacted by his superiors regarding the incident until he received a predismissal conference memorandum on 5 June 1991, from Gene Baker, his immediate supervisor. Following a 6 June dismissal conference, petitioner was discharged for unacceptable personal conduct. In a 7 June letter, Ann Q. Duncan, Chairperson of the Employment Security Commission explained that petitioner was being dismissed for unacceptable conduct, including taking the coffee without paying Catherine High and filing criminal charges against High, which were found to be frivolous. Such conduct, said Duncan, caused petitioner's reputation as the EEO officer at ESC to be called into question and his respect among fellow employees diminished.

Petitioner filed two appeals to the ESC decision to discharge him. The basis of his appeals were that ESC lacked "just cause" to dismiss him pursuant to N.C. Gen. Stat. § 126-35 (1995), and that he had been

discharged in retaliation for having filed discrimination charges against ESC in 1989, in violation of Title VII, Section 704(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000e-3 (1964). Petitioner did not appeal upon a state claim of retaliatory discharge pursuant to N.C. Gen. Stat. § 126-36. Pursuant to N.C. Gen. Stat. § 7A-759, petitioner's charge of retaliatory discharge was investigated by the Civil Rights Division of the Office of Administrative Hearings.

Through its investigation, OAH found reasonable cause to believe that a violation of Title VII had occurred. OAH presented petitioner with three options. He could: (1) receive a right to sue letter; (2) commence a contested case hearing in OAH; or (3) do nothing. Petitioner chose to commence a contested case hearing with regard to the retaliatory discharge claim. He also filed a petition for contested case hearing with regard to the N.C. Gen. Stat. § 126-35 lack of "just cause" claim. Pursuant to an order of the Chief Administrative Law Judge of OAH, both cases were consolidated for hearing. A hearing was conducted by ALJ Sammie Chess on 12-14 July 1993.

Pursuant to N.C. Gen. Stat. § 7A-759(e), an ALJ decision on the merits of a retaliatory discharge claim is a final decision binding on the parties. However, with regard to the N.C. Gen. Stat. § 126-35 lack of "just cause" claim, an ALJ issues a recommended decision to the State Personnel Commission, which then issues a final decision. N.C. Gen. Stat. § 126-37 (1995). ALJ Chess issued two separate decisions following the hearing. In his recommended decision to the State Personnel Commission, ALJ Chess found that ESC had the burden of proving it had "just cause" to discharge petitioner. ALJ Chess concluded that ESC had failed to meet that burden and recommended petitioner be reinstated. In his final decision regarding the retaliatory discharge claim pursuant to Title VII, ALJ Chess concluded that petitioner's discharge violated Section 704(a) of Title VII of the Civil Rights Act of 1964, in that his dismissal was retaliatory. Pursuant to that holding, ALJ Chess ordered petitioner reinstated.

The ALJ's recommended decision reinstating petitioner for lack of "just cause" was adopted, with slight modification, by the State Personnel Commission. ESC appealed the State Personnel Commission order and the ALJ final decision separately, pursuant to N.C. Gen. Stat. § 150B-50 (1995). In a 13 August 1994 order, Judge Narley L. Cashwell upheld the final decision of the ALJ with regard to the retaliatory discharge claim in which petitioner was ordered reinstated. In a 13 March 1995 order, Judge Wiley F. Bowen reversed the

EMPLOYMENT SECURITY COMM. v. PEACE

[122 N.C. App. 313 (1996)]

final decision of the State Personnel Commission and dismissed Peace's petition challenging his dismissal. From these superior court orders, ESC appeals Judge Cashwell's order affirming the retaliatory discharge claim. Petitioner appeals Judge Bowen's order reversing the State Personnel Commission decision to reinstate him.

Initially, we note that the two cases should have been consolidated for all purposes except the final agency decision by the ALJ pursuant to N.C. Gen. Stat. § 150B-26. Failing that, the appeals from the ALJ and State Personnel Commission orders should have been consolidated in ESC's petition for judicial review to the superior court. At the very least, the two appeals should have been consolidated for hearing in the superior court, as both appeals involved identical facts and similar questions of law. As a result of the failure to consolidate and the filing of two separate petitions for judicial review, two inconsistent orders were issued from Wake County Superior Court. In addition, we are now presented with two records on appeal and two sets of lengthy briefs, all arising out of the same set of facts.

After careful review of both records and both sets of briefs in this case, we agree with petitioner that the superior court erred in reversing the State Personnel Commission decision to reinstate petitioner. For this reason, it is unnecessary for us to reach the merits of ESC's appeal of the superior court order affirming the ALJ order to reinstate petitioner under the retaliatory discharge claim, as that issue is rendered moot by our decision reinstating the decision of the State Personnel Commission.

This Court's as well as the superior court's review of a final agency decision is governed by N.C. Gen. Stat. § 150B-51 (1995). *In Re: Appeal of Ramseur*, 120 N.C. App. 521, 463 S.E.2d 254 (1995); *Dockery v. Dept. of Human Resources*, 120 N.C. App. 827, 463 S.E.2d 580 (1995). The proper standard of review depends upon the particular issues presented on appeal. *Brooks v. Ansco & Associates*, 114 N.C. App. 711, 716, 443 S.E.2d 89, 92 (1994). "If it is alleged that the agency's decision was based on an error of law, then *de novo* review is required. If, however, it is alleged that the agency's decision was not supported by the evidence or that the decision was arbitrary or capricious, then the reviewing court must apply the 'whole record' test." *In re: Appeal of Ramseur*, 120 N.C. App. at 524, 463 S.E.2d at 256 (citations omitted).

EMPLOYMENT SECURITY COMM. v. PEACE

[122 N.C. App. 313 (1996)]

To determine whether an agency's findings are supported by substantial evidence, the reviewing court applies the "whole record" test. *Leiphart v. N.C. School of the Arts*, 80 N.C. App. 339, 342 S.E.2d 914, *cert. denied*, 318 N.C. 507, 349 S.E.2d 862 (1986). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Comr. of Insurance v. Rating Bureau*, 292 N.C. 70, 80, 231 S.E.2d 882, 888 (1977) (citation omitted). The "whole record" test requires the reviewing court to take into account all evidence in the record, including evidence which supports the Commission's decision as well as that which in fairness detracts from it. *Id.* However, "[t]he 'whole record' test does not allow the reviewing court to replace the [agency's] judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it de novo . . . ." *Thompson v. Board of Education*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977) (citation omitted).

[1] As the reviewing court, we must take into account the specialized expertise of the staff of an administrative agency, in this case, the State Personnel Commission. *High Rock Lake Assoc. v. Environmental Management Comm.*, 51 N.C. App. 275, 279, 276 S.E.2d 472, 475 (1981). While there is evidence in the record contrary to the Commission's findings, neither this Court nor the superior court may substitute its judgment for that of the agency. After reviewing the record, we find substantial evidence to support the State Personnel Commission's findings of fact.

While the criminal charges brought by petitioner against Ms. High were found to be frivolous, the Commission found as fact that "[t]he petitioner believed that Ms. High was capable of scalding him with coffee." In passing upon issues of fact, the Commission, as trier of fact, is the sole judge of the credibility of the witnesses, and of the weight to be given to their testimony. This being true, it may accept or reject the testimony of a witness, in whole or in part, depending solely upon whether it believes or disbelieves the witness. *Anderson v. Motor Co.*, 233 N.C. 372, 376, 64 S.E.2d 265, 268 (1951). The Commission found it pertinent that the judicial officer (magistrate) "found facts sufficient to issue the warrant." The Commission also found that none of the reasons for petitioner's dismissal were ever discussed with him prior to 6 June 1991. Applying the "whole record" test, we find the Commission's findings are supported by substantial evidence.

Based upon its findings of fact, the State Personnel Commission made the following conclusions of law:

1. Petitioner was a Permanent State employee within the meaning of that term as defined in North Carolina General Statute Section 126-39, at the time of his dismissal on June 7, 1991. The Office of Administrative Hearings has jurisdiction to hear Petitioner's appeal where he has alleged that Respondent lacked just cause to terminate his employment without warning and where he has alleged that Respondent committed procedural violations while implementing the dismissal. [N.C. Gen. Stat. §]126-35.

2. [N.C. Gen. Stat. §]126-35(a) provides, in part, that "[N]o permanent employee subject to the State Personnel Act shall be discharged . . . for disciplinary reasons, except for just cause." Where just cause is an issue, the Respondent bears the ultimate burden of persuasion. A just cause issue involves both procedural and substantive questions. Causes for dismissal fall into two categories: (1) causes relating to performance of job duties and, (2) causes relating to personal conduct - no prior warnings are required under (2).

3. The Petitioner was not discharged for just cause.

   . . . .

5. Respondent's actions, or lack thereof, following the April 10, 1991 coffee incident and May 21, 1991 court judgment were inconsistent with its claim that Petitioner's conduct was unacceptable. For the two month period, April 10, 1991 through June 6, 1991, Respondent never raised the issue of unacceptable personal conduct with Petitioner; in addition, during that period, Petitioner's work performance was neither reviewed nor appraised by Respondent to determine what impact, if any, the above incidents had on his reputation as the EEO Officer. No evidence showed that Petitioner was unfit to continue his employment due to the events occurring in April and May, 1991.

   . . . .

8. Petitioner belonged to the petty fund and in good faith believed that, as in the past, such membership continued his entitlement to an occasional cup of coffee.

   . . . .

13. Petitioner had the right to seek protection from potential bodily harm by taking his complaint to proper judicial officials.

Based upon the foregoing conclusions of law, the Commission reversed ESC's decision to dismiss petitioner because such decision was without "just cause."

Petitioner's argument that his discharge was not for "just cause" based upon his personal misconduct raises a question of law and is, therefore, reviewed *de novo* by this Court. *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 678, 443 S.E.2d 114, 120 (1994). An alleged error of law "exists if a conclusion of law entered by the administrative agency is not supported by the findings of fact entered by the agency or if the conclusion of law does not support the decision of the agency." *Brooks*, 114 N.C. App. at 717, 443 S.E.2d at 92. In this case, we hold the agency's findings, support its conclusions, and its conclusions support its decision to reinstate petitioner.

[2] As a career state employee, defined in N.C. Gen. Stat. § 126-1A, petitioner could not be dismissed from employment with ESC except for "just cause." N.C. Gen. Stat. § 126-35. The "just cause" provision creates a "property interest of continued employment . . . protected by the Due Process Clause of the United States Constitution." *Leiphart*, 80 N.C. App. at 348, 342 S.E.2d at 921 (citations omitted). In its order, the State Personnel Commission held that the burden of proving "just cause" existed to justify dismissal is upon the State. In a recent decision involving almost identical "just cause for termination" provisions governing City of Raleigh employees, this Court held the City's rules placing the burden of showing lack of "just cause" upon the city employee constitutionally infirm. *Soles v. City of Raleigh Civil Service Comm.*, 119 N.C. App. 88, 457 S.E.2d 746, *disc. review allowed*, 341 N.C. 652, 462 S.E.2d 517 (1995). In reaching its decision, the *Soles* court applied a balancing test, weighing the respective interests of the individual and the governmental entity. *Id.* at 95, 457 S.E.2d at 751. Specifically, the Court looked at three factors:

"[F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.* (quoting *Mathews v. Eldridge,* 424 U.S. 319, 335, 47 L.Ed. 2d 18, 33 (1976)).

Examining those factors, the *Soles* court held that Mr. Soles' interest in retaining his employment was a constitutionally protected property right. Regarding the second factor, the court held that "requiring the dismissed employee to prove that the 'action taken against him was unjustified' significantly increases the risk of an erroneous deprivation of the right to retain employment." *Id.* at 96, 457 S.E.2d at 752. With respect to the third factor, the court recognized the City's legitimate interest in maintaining good, efficient employees for the efficient operation of government, and in that case, insuring that employees are not using illegal drugs. Nevertheless, the court concluded that the "scales tip in favor of an individual employee's right to retain constitutionally protected employment until the [governmental entity] proves cause exists for termination." *Id.* Given the similarities between the case *sub judice* and *Soles,* we agree with the analysis, and are in fact bound by the holding, in the *Soles* decision. *See In the Matter of Appeal from Civil Penalty,* 324 N.C. 373, 379 S.E.2d 30 (1989). Therefore, we find that the Commission was correct in requiring ESC to carry the burden of proving petitioner was terminated for good cause.

The remaining issue left for our consideration is whether the State Personnel Commission erred in concluding as a matter of law petitioner was dismissed without "just cause." N.C. Gen. Stat. § 126-35 does not define "just cause." Interpreting the statute, we are to give the words their ordinary meaning. *Reed v. Byrd,* 41 N.C. App. 625, 255 S.E.2d 606 (1979). In this case, the Commission found that petitioner, in good faith, believed his membership in the office petty fund allowed him to obtain coffee from the personnel file room. The Commission also found that petitioner had the right to seek protection from potential bodily harm by taking his complaint to the proper judicial officials. There is substantial competent evidence in the record to support these findings.

ESC specifically dismissed petitioner for obtaining coffee without permission and for filing a criminal charge, later found to be frivolous. Based upon the Personnel Commission's findings, neither basis for dismissal is well founded. Thus, we cannot say that the Commission erred, as a matter of law, in its conclusion that ESC failed to show "just cause" for its dismissal of petitioner.

In summary, we find the Commission's findings of fact supported by substantial evidence in the record. Furthermore, the Commission's conclusions of law are supported by the findings of fact and support the decision of the Commission. *See Brooks*, 114 N.C. App. 711, 443 S.E.2d 89. For the foregoing reasons, we affirm the order of the State Personnel Commission reinstating petitioner. ESC's appeal in case 93 CVS 10599 affirming the ALJ on the retaliatory discharge claim is dismissed as moot, as a result of our affirming the order of the State Personnel Commission. In case 94 CVS 11517 the order of the superior court is reversed.

Reversed in Case No. 94 CVS 11517.

Appeal dismissed in Case No. 93 CVS 10599.

Judges GREENE and LEWIS concur.