CAROLYN CAMPBELL, Petitioner v. NORTH CAROLINA DEPARTMENT OF
TRANSPORTATION—DIVISION OF MOTOR VEHICLES, Respondent

No. COA02-81

(Filed 21 January 2003)

## 1. Administrative Law— jurisdiction of Office of Administrative Hearings—termination of state employee—Americans with Disabilities Act

A de novo review revealed that the trial court erred by concluding that the Office of Administrative Hearings lacked jurisdiction to consider a contested case regarding the termination of petitioner state employee whose asthma and severe allergies were worsened by her work conditions even though petitioner was not a career state employee under N.C.G.S. § 126-34.1(a)(1) and the American with Disabilities Act was not added as a basis for jurisdiction in the list provided under N.C.G.S. § 126-34.1(a)(11) until 1 October 2001, because: (1) petitioner properly alleged that respondent terminated her employment based on plaintiff being unable to return to work without reasonable accommodations; (2) petitioner properly alleged she is a person with a disability within the meaning of N.C.G.S. § 168A-3(7a) based on her asthma, severe allergies, and physical impairments affecting her respiratory system and substantially limiting her major life activities of breathing and working; and (3) petitioner properly alleged that she was a qualified person with a disability within N.C.G.S. § 168A-9a.

## 2. Public Officers and Employees— termination of state employee—constructive discharge—contested case

The State Personnel Commission erred in concluding that a state employee had voluntarily resigned her position and had not been terminated as required to establish jurisdiction in the Office of Administrative Hearings under N.C.G.S. § 126-34.1(a)(2)b where the employee sufficiently alleged a constructive discharge in that she was informed that she could either return to work in conditions that violated the law or be deemed to have voluntarily resigned. When an employee is deemed to have voluntarily resigned by a state agency for being unable or unwilling to work in conditions that may constitute discrimination, such resignation can constitute a constructive discharge entitling the employee to file a contested case alleging termination.

**3. Public Officers and Employees— termination of state employee—findings of fact—disability**

The whole record test revealed that the trial court did not err in an action regarding the termination of a state employee whose asthma and severe allergies were worsened by her work conditions by concluding that most of the State Personnel Commission's findings of fact were unsupported by substantial evidence and arbitrary and capricious, because: (1) the evidence supports the conclusion that petitioner is a person with a disability under N.C.G.S. Ch. 168A; (2) petitioner established that she is a qualified person with a disability under N.C.G.S. § 168A-3(9)a since the fact that petitioner's solution for a clean work environment was a job transfer does not support a conclusion that petitioner did not properly prove that she could perform her job with reasonable accommodations; and (3) petitioner did not abdicate her right to reasonable accommodations either by refusing to accept respondent's offers or by failing to offer respondent additional suggestions for what she would consider a reasonable accommodation.

**4. Public Officers and Employees— termination of state employee—findings of fact—doctor examination**

The trial court erred in an action regarding the termination of a state employee whose asthma and severe allergies were worsened by her work conditions by determining that there was no substantial evidence to support the State Personnel Commission's finding of fact and conclusion of law that a doctor examined petitioner and instructed that she increase her inhaler medication, monitor her peak flow measurements, use a HEPA filter, and wear a face mask, because the evidence supports two reasonably conflicting views.

**5. Public Officers and Employees— termination of state employee—reasonable accommodations**

The trial court did not err in an action regarding the termination of a state employee whose asthma and severe allergies were worsened by her work conditions by determining that there was no substantial evidence to support the State Personnel Commission's finding of fact and conclusion of law that respondent made reasonable accommodations under N.C.G.S. § 168A-3(10)a to enable petitioner to return to work, because: (1) the pertinent dust report did not provide adequate informa-

tion regarding the dust level of petitioner's work environment when the dust level testing was not performed in petitioner's desk area; and (2) respondent did not provide evidence regarding how a doctor came to the conclusion that a HEPA filter, face mask, increased asthma medication, and petitioner's monitoring of her peak flow measurements would be reasonable accommodations.

Appeal by respondent from an order entered 30 October 2001 by Judge Abraham Penn Jones in Wake County Superior Court. Heard in the Court of Appeals 19 September 2002.

*Edmisten & Webb, by William Woodward Webb, Sr., for petitioner-appellee.*

*Attorney General Roy Cooper, by Associate Attorney General Kimberly P. Hunt and Special Deputy Attorney General Hal F. Askins, for respondent-appellant.*

CAMPBELL, Judge.

Respondent, the North Carolina Department of Transportation Division of Motor Vehicles, appeals from an order of the Superior Court reversing the decision of the State Personnel Commission and adopting the recommended decision of the Administrative Law Judge.

Petitioner was employed by respondent from 5 October 1998 until 8 April 1999 as a Processing Assistant IV. Petitioner's job duties required her to work with stolen vehicle records kept in open files. The files were kept on shelves, not in filing cabinets, with some filed in boxes on the shelves. Petitioner has suffered from asthma since childhood and has severe allergies to dust and paint fumes. In late October 1998, petitioner noticed her conditions were aggravated, apparently by the dust in the open files. Petitioner sought medical care for asthma attacks in November and December 1998.

In early January 1999, while painters worked on her floor, petitioner was assigned to purge the open files. On 11 January 1999, petitioner suffered a severe asthma attack and was hospitalized for five days. Dr. Josephine Brown, M.D. ("Dr. Brown"), petitioner's physician, testified that upon arrival "this woman was very close to death in the emergency room. She was close to being what we call intubated, having to put in a tube for artificial respiration." On 15

January 1999, Dr. Brown, wrote to Respondent explaining that petitioner is "severely allergic to dust and paint fumes. . . . She will not be able to return under her present working conditions, which exposed her to dust and also to paint fumes." On 25 January 1999, petitioner returned to work. Respondent offered petitioner a mask to protect her from the dust in the records and offered to remove her from the area when painting was scheduled. Petitioner left work since Dr. Brown had not approved of her working with only a mask to prevent another attack.

On 28 January 1999, petitioner met with Mr. Ronald Oates ("Mr. Oates"), the State of North Carolina Department of Transportation's Americans with Disabilities Act (ADA) coordinator. Mr. Oates recommended that respondent, as a reasonable accommodation, search for another placement for petitioner where the environment is well ventilated, there are no open paper files or excessive dust, and no paint or other fumes. On 15 February 1999, Dr. Brown again wrote to respondent and recommended that petitioner "not be exposed to dust and fumes in the workplace, as this will exacerbate her asthma."

In relation to a workers' compensation claim petitioner filed in January, petitioner's work area was tested for respirable dust levels and petitioner was examined by another doctor for a second opinion. The dust level test revealed the respirable dust levels were very low. The report recommended that petitioner "not be allowed to open up old file boxes that appear to be dusty or have visible water damage or signs of dampness" without a face mask. On 3 March 1999, petitioner met with Dr. Craig LaForce, M.D. ("Dr. LaForce") an allergy specialist. Dr. LaForce recommended petitioner increase use of her inhaler, monitor her peak flow meter measurements and utilize a HEPA filtration system. In response to this recommendation, Dr. Brown wrote to respondent opposing Dr. LaForce's solution, explaining that "[t]he HEPA filtration system and mask may decrease the amount of dust, but judging from the severity of the last asthma attack, I recommend she be placed in another environment."

As a result of Dr. LaForce's recommendations, respondent wrote to petitioner on 19 March 1999 offering to purchase the HEPA filter and requiring that she return to work within seven days. Petitioner did not return to work on the advice of Dr. Brown, who explained "the [HEPA] machine is like a miniature air conditioner that is cold. . . . [it] could enhance the probability of another asthma attack." Therefore, petitioner wrote to respondent requesting again that Dr. Brown's recommendation be followed, that "I be transferred into

another position in a different building at the same grade level. I will also accept a position at a lower grade."

Respondent and petitioner met on 5 April 1999 to discuss possible solutions. Respondent firmly maintained that its willingness to provide a HEPA filtration system and face mask constituted a reasonable accommodation. Petitioner firmly maintained that a reasonable accommodation would be assistance in seeking another placement. Lieutenant Colonel Brinson ("Lt. Col. Brinson") testified that he could not follow petitioner's request, as recommended by respondent's ADA coordinator, and assist in placing petitioner in a well-ventilated environment without excessive dust because "I did not have another position that does not work with files." Petitioner's testimony sheds light on this exchange:

Q: . . . what, if any, efforts did they make to secure you another position away from this work site in another part of the building or another building or wherever?

A: Well, they didn't because on the 5th of April of '99 when I had the meeting with, you know, several people [from DOT], you know, I was told that there was dust everywhere and they didn't have anything—any position for me to go into because there was dust everywhere.

Q: And to your knowledge, is that correct? I mean, is there dust everywhere throughout all the buildings that—

A: Well, there is dust all over the place, but it's not open files in every office that you work in. I have worked in several offices that, you know, I worked with files, but they was in a file cabinet and the dust was more contained than being open.

The meeting ended without compromise. Respondent explained to petitioner that if she did not return to work by 8 April 1999 she would be deemed to have voluntarily resigned her position. Following Dr. Brown's advice petitioner did not return to work.

On 9 June 1999, petitioner filed a petition for a contested case hearing alleging she was discriminated against due to her asthmatic condition and was unlawfully terminated. On 3 December 1999, Administrative Law Judge Robert Roosevelt Reilly, Jr. issued a recommended decision finding that petitioner was a handicapped person who had been unlawfully discriminated against, and respondent failed to make a reasonable accommodation. On 16 May 2000, the

**CAMPBELL v. N.C. DEP'T OF TRANSP.**

[155 N.C. App. 652 (2003)]

State Personnel Commission ("Commission") issued a decision rejecting the recommended decision and finding that jurisdiction was lacking, but that even if it existed, respondent had made reasonable accommodations for petitioner. On 30 October 2001, Wake County Superior Court Judge Abraham Penn Jones reversed the decision of the Commission, holding that the Commission's findings of fact and conclusions of law were unsupported by substantial evidence and were arbitrary and capricious, and the conclusions of law were also affected by errors of law. The Superior Court adopted the recommended decision of the Administrative Law Judge.

Respondent appeals to this Court asserting there is competent evidence to support the Commission's decision, the decision was not arbitrary and capricious, and there was no error of law. Respondent asserts the decision of the superior court should be reversed and the Commission's decision should be reinstated.

This Court's review is governed by N.C. Gen. Stat. § 150B-51 (2001). "Our review of a superior court order regarding an agency decision consists of: '(1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly.' " *Souther v. New River Area Mental Health,* 142 N.C. App. 1, 3, 541 S.E.2d 750, 752, *aff'd,* 354 N.C. 209, 552 S.E.2d 162 (2001) (citations omitted). "The proper standard of review depends upon the particular issues presented on appeal." *Employment Security Comm. v. Peace,* 122 N.C. App. 313, 317, 470 S.E.2d 63, 67 (1996).

> Where the petitioner alleges that the agency decision was either unsupported by the evidence, or arbitrary and capricious, the [reviewing] court applies the 'whole record test' to determine whether the agency decision was supported by substantial evidence contained in the entire record. Where the petitioner alleges that the agency decision was based on error of law, the reviewing court must examine the record *de novo,* as though the issue had not yet been considered by the agency.

*Souther,* 142 N.C. App. at 3-4, 541 S.E.2d at 752 (citation omitted). "[I]t appears uncontroverted that the foregoing rule should not be interpreted to mean the manner of our review is governed merely by the label an appellant places upon an assignment of error; rather, we first determine the actual nature of the contended error, then proceed with an application of the proper scope of review." *Amanini v. N.C. Dept. of Human Resources,* 114 N.C. App. 668, 675, 443 S.E.2d 114,

118 (1994). Therefore, we address each issue on appeal with the appropriate standard of review set forth in N.C. Gen. Stat. § 150B-51.

The issues presented to the Court on appeal are whether or not the superior court was correct in determining that: (I) the Commission committed an error of law concluding that the Office of Administrative Hearings lacked jurisdiction; and (II) the Commission's conclusions of law were affected by errors of law, unsupported by substantial evidence, and arbitrary and capricious; and (III) the Commission's findings of fact were unsupported by substantial evidence and arbitrary and capricious.

## I. Jurisdiction

[1] Respondent asserts the superior court erred in reversing the Commission's decision that the Office of Administrative Hearings lacked jurisdiction. "When the petitioner contends the agency decision was affected by an error of law, G.S. § 150B-51(b)(1)(2)(3) & (4), *de novo* review is the proper standard." *R.J. Reynolds Tobacco Co. v. N.C. Dep't of Env't & Natural Res.*, 148 N.C. App. 610, 614, 560 S.E.2d 163, 166, *disc. review denied*, 355 N.C. 493, 564 S.E.2d 44 (2002). The Office of Administrative Hearings has limited jurisdiction to consider contested cases. N.C. Gen. Stat. § 126-34.1 (2001). The Commission determined the Office of Administrative Hearings lacked jurisdiction because: (A) the petitioner was not a career State employee as required by N.C. Gen. Stat. § 126-34.1(a)(1); (B) no jurisdiction exists for complaints regarding violation of the Americans with Disabilities Act (ADA) and; (c) petitioner does not have a handicapping condition, is not a qualified handicapped person, and was not terminated as required by N.C. Gen. Stat. § 126-34.1(a)(2)b.

## A. Jurisdiction as a Career State Employee

The Commission determined the Office of Administrative Hearings lacked jurisdiction because the petitioner is not a career State employee. The Commission was correct. Jurisdiction exists for a career State employee to file a contested case in the Office of Administrative Hearings pursuant to N.C. Gen. Stat. § 126-34.1(a)(1). A " 'career State employee' means a State employee who: . . . (2) [h]as been continuously employed by the State of North Carolina . . . for the immediate 24 preceding months." N.C. Gen. Stat. § 126-1.1 (2001). There is no evidence that petitioner is a career State employee, therefore the Office of Administrative Hearings did not have jurisdiction over this claim pursuant to N.C. Gen. Stat. § 126-34.1(a)(1).

CAMPBELL v. N.C. DEP'T OF TRANSP.

[155 N.C. App. 652 (2003)]

## B. Jurisdiction under the Americans with Disabilities Act

The Commission determined the Office of Administrative Hearings lacked jurisdiction based upon an alleged violation of the ADA. The Commission was correct. Jurisdiction for the Office of Administrative Hearings is limited to those bases listed in the statute, N.C. Gen. Stat. § 126-34.1(a)(11). The ADA was not added to the list until 1 October 2001. N.C. Gen. Stat. § 126-34.1(a)(11). Therefore the Commission was correct in its determination that the Office of Administrative Hearings lacked jurisdiction to consider this claim.

## C. Jurisdiction for discrimination against a "qualified person with a disability"

The Commission determined that the Office of Administrative Hearings lacked jurisdiction pursuant to N.C. Gen. Stat. § 126-34.1(a)(2)b, which provides jurisdiction for: "[a]n alleged unlawful State employment practice constituting discrimination, as proscribed by G.S. 126-36, including: . . . termination of an employee in retaliation for the employee's opposition to alleged discrimination on account of the employee's . . . handicapping condition as defined by Chapter 168A of the General Statutes." Here, the Commission was incorrect. Respondent asserted that jurisdiction was lacking because: the petitioner does not have a "handicapping condition as defined by Chapter 168A of the General Statutes;" the petitioner is not a "qualified person with a disability;" and the petitioner was not "terminated."

Petitioner properly alleged that Respondent terminated her employment. Though Respondent asserts it considers Petitioner to have voluntarily resigned her position and therefore she was not terminated within the meaning of the statute, Petitioner properly alleged she was unable to return to work without reasonable accommodations and therefore was terminated.

Petitioner further alleged she is a "person with a disability" within the meaning of N.C. Gen. Stat. § 168A-3(7a) (2001). A "person with a disability" is "any person who (i) has a physical or mental impairment which substantially limits one or more major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment." N.C. Gen. Stat. § 168A-3 (7a). A physical or mental impairment "means (i) any physiological disorder or abnormal condition . . . caused by . . . illness, affecting one or more of the following body systems: . . . respiratory." N.C. Gen. Stat.

§ 168A-3(7a)a. A major life activity means "functions such as . . . breathing . . . and working." N.C. Gen. Stat. § 168A-3 (7a)b. Petitioner alleged that she has asthma and severe allergies, physical impairments affecting her respiratory system. Petitioner further alleged her asthma and allergies substantially limit her major life activities of breathing and working.

Finally, petitioner properly alleged that she was a "qualified person with a disability" within N.C. Gen. Stat. 168A-9a. (2001). A "qualified person with a disability" means "[w]ith regard to employment, a person with a disability who can satisfactorily perform the duties of the job in question, with or without reasonable accommodation." N.C. Gen. Stat. § 168A-3(9)a. Petitioner alleged that she asked for reasonable accommodations to enable her to be able to perform her job duties. Respondent asserts jurisdiction is lacking because petitioner's requests for accommodations were unreasonable, and she rejected respondent's offers for reasonable accommodations. However, whether the accommodations offered to petitioner were "reasonable accommodations" or whether petitioner's requests constituted "reasonable accommodations" is not at issue in determining jurisdiction. Jurisdiction rests on the allegations of the petitioner. In this case, petitioner's allegations sufficiently establish jurisdiction pursuant to N.C. Gen. Stat. § 126-34.1(a)(2)a. Therefore, the superior court was correct in finding the Commission erred by determining jurisdiction did not exist.

In addressing the remaining issues presented on appeal, we note that the Commission's conclusions of law and findings of fact are often mixed findings of fact and law or were mislabeled. Therefore, we address the pure conclusions of law in the "conclusions of law" section and then address the mixed findings and pure findings of fact in the "findings of fact" section.

## II. Conclusions of Law—Errors of Law

[2] The superior court determined that all the Commission's conclusions of law were affected by errors of law. Since errors of law are reviewed *de novo* by the reviewing court, we review each conclusion of law *de novo*. *Souther*, 142 N.C. App. at 4, 541 S.E.2d at 752.

Conclusion of law number one found that jurisdiction was lacking because petitioner did not prove she was a career State employee. For the reasons discussed in section (I) (A) of this opinion, we hold the superior court was incorrect in finding this portion of conclusion

of law number one was affected by an error of law. A portion of conclusion of law number one and conclusion of law number seven also found that petitioner had voluntarily resigned her position and therefore had not been "terminated," as required to establish jurisdiction under N.C. Gen. Stat. § 126-34.1(a)(2)b. Regarding this contention, we hold that when an employee is "deemed to have voluntarily resigned" by the State agency for being unable or unwilling to work in conditions that may constitute discrimination, such resignation can constitute a constructive discharge entitling the employee to file a contested case alleging termination pursuant to N.C. Gen. Stat. § 126-34.1(a)(2)b. Petitioner was informed that she could either return to work in conditions she alleges were in violation of the law or be "deemed to have resigned." We hold a constructive discharge constitutes a termination for the purpose of interpreting N.C. Gen. Stat. § 126-34.1. Therefore, we hold the superior court correctly determined that this portion of conclusion of law number one, and conclusion of law number seven were affected by errors of law.

### III. Findings of Fact

[3] The superior court, in its order, determined that most of the Commission's findings of fact, and all the conclusions of law were "unsupported by substantial, competent evidence, and are arbitrary and capricious considering the record as a whole." We address the determination that the Commission's findings of fact are unsupported by substantial, competent evidence.

"Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Joyce v. Winston-Salem State University*, 91 N.C. App. 153, 158, 370 S.E.2d 866, 869 (1988) (quoting *Comr. of Insurance v. Rating Bureau*, 292 N.C. 70, 231 S.E.2d 882 (1977)). "[S]ubstantial evidence 'is more than a scintilla or a permissible inference.' " *Id.*, (quoting *Lackey v. Dept. of Human Resources*, 306 N.C. 231, 293 S.E.2d 171 (1982)). To review whether the findings of fact are supported by substantial evidence, our standard of review is the whole record test. *Souther*, 142 N.C. App. at 3-4, 541 S.E.2d at 752.

The 'whole record' test does not permit the reviewing court to substitute its judgment for the agency's as between two reasonably conflicting views; however, it does require the court to take into account both the evidence justifying the agency's decision and the contradictory evidence from which a different result could be reached.

CAMPBELL v. N.C. DEP'T OF TRANSP.

[155 N.C. App. 652 (2003)]

*Floyd v. N.C. Dept. of Commerce*, 99 N.C. App. 125, 128, 392 S.E.2d 660, 662 (1990) (quoting *Watson v. N.C. Real Estate Comm.*, 87 N.C. App. 637, 639, 362 S.E.2d 294, 296 (1987)). "[T]he 'whole record' test 'gives a reviewing court the capability to determine whether an administrative decision has a rational basis in the evidence.' " *ACT-UP Triangle v. Commission for Health Services*, 345 N.C. 699, 706-07, 483 S.E.2d 388, 392 (1997) (quoting *Bennett v. Bd. of Education*, 69 N.C. App. 615, 618, 317 S.E.2d 912, 915). "If an agency decision is not supported by substantial evidence in view of the entire record as submitted, it may be reversed." *Joyce*, 91 N.C. App. at 157-58, 370 S.E.2d at 869 (citation omitted).

In finding of fact number twenty, the Commission found that "[a]s a Processing Assistant IV, Petitioner was required to maintain files pertaining to stolen vehicles. The files were centrally located within Respondent's offices on New Bern Avenue in Raleigh, N.C." Since this is a pure finding of fact, our review is the whole record test. We find there is ample evidence to support this undisputed finding of fact.

Finding of fact number twenty-one states that petitioner failed to establish a *prima facie* case that she is a person with a disability under N.C. Gen. Stat. § 168A because she failed to establish that her asthma substantially limits a major life activity. This is a mixed finding of fact and law. Conclusion of law number two is also a mixed finding in which the Commission determined that jurisdiction was lacking because petitioner had not established that she is a "person with a disability." A "person with a disability" includes any person who has any "abnormal condition . . . caused by illness, affecting [the] . . . respiratory [system]" that "substantially limits one or more" "functions such as . . . breathing . . . and working." N.C. Gen. Stat. § 168A-3(7a). Respondent, and the Commission, assert petitioner failed to establish her illness "substantially" limits her breathing or working. The evidence petitioner offered was evidence of her five-day hospitalization in January 1999, and her inability to return to work thereafter without reasonable accommodations of her asthma and allergies. Reviewing the whole record, there is no evidence to support the conclusion that these limitations are not "substantial" within the meaning of N.C. Gen. Stat. § 168A. Moreover, Dr. Brown testified that on the night petitioner was admitted to the emergency room,

[s]he had something called a peak flow which was less than 200, and that's where we can evaluate the severity of the asthma attack. And a peak flow under 200 is extremely severe. They

[the hospital workers present at the time] informed me that they tried to break this lady's asthma attack for several hours in the emergency room with oxygen, Albuterol, treatments which are standard for asthma, and steroids and she just wasn't going to get any better.

"[T]his woman was very close to death in the emergency room." Moreover, following this attack, it is uncontested that petitioner was unable to return to work without reasonable accommodations. Therefore, we hold the superior court correctly reversed this mixed finding by the Commission as it was unsupported by substantial evidence. We find the evidence supports the conclusion that petitioner is a "person with a disability."

Finding of fact number twenty one and conclusion of law number two further conclude that petitioner failed to establish that she is a "qualified person with a disability." These are mixed findings of fact and conclusions of law. A "qualified person with a disability" means "[w]ith regard to employment, a person with a disability who can satisfactorily perform the duties of the job in question, with or without reasonable accommodation." N.C. Gen. Stat. § 168A-3(9)a. First, Respondent asserts that the clause "with or without reasonable accommodation" requires the person to be capable of performing the job both with *and* without accommodations. Under this reading an employee would have to be capable of performing the job duties without reasonable accommodations. Once the employee had satisfactorily performed the job without accommodation, the employee would be a "qualified person with a disability." We reject this interpretation. The plain language of the statute requires the disabled person be able to satisfactorily perform the job, *either* "with *or* without" reasonable accommodation. Therefore to be classified as a "qualified person with a disability" the employee must be capable of performing the job duties with reasonable accommodations. The term reasonable accommodations, in the context of employment, is:

> making reasonable physical changes in the workplace, including, but not limited to, making facilities accessible, modifying equipment and providing mechanical aids to assist in operating equipment, or making reasonable changes in the duties of the job in question that would accommodate the known disabling conditions of the person with a disability seeking the job in question by enabling him or her to satisfactorily perform the duties of that job.

N.C. Gen. Stat. § 168A-3(10)a. (2001).

Under whole record review of the facts, we do not find substantial evidence to support the finding that "[petitioner's] evidence showed that she could not perform the job duties under any circumstances." Presumably this conclusion stems from petitioner's repeated requests for assistance with a job transfer and her doctor's statements that she should not return to her previous work environment. However, petitioner was clear in her requests for reasonable accommodations that she needed a work environment that would not provoke an asthma attack. The fact that her solution for a clean work environment was a job transfer does not support a conclusion that petitioner did not properly prove that she could perform her job with reasonable accommodations. Petitioner requested a well-ventilated environment without paint fumes, open paper files or excessive dust. She asserted that with such accommodations she could return to work. Petitioner offered to accept, as likely the easiest solution to providing such an environment, a transfer to a job in a less dusty, better ventilated building using a closed filing system. Since the accommodations to her workplace would be classified as "reasonable physical changes in the workplace," petitioner's evidence established that she is a qualified person with a disability because she could perform the job with reasonable accommodations. Moreover, we note that reasonable accommodations include a change in job duties, therefore even if petitioner had testified that she could not perform some of her job duties, for example working with the old files in the open boxes, she still would be capable of performing her job with reasonable accommodations and therefore be considered a "qualified person with a disability."

In finding of fact number 19, the Commission found that

[p]etitioner at no time offered any possible or suggested accommodations for Respondent to make to her position as Processing Assistant IV. The only suggestions she made was for Respondent to find her another position. However, at no time did Petitioner provide any information concerning an available position which she would find acceptable.

Upon considering the whole record, we find substantial evidence to support this finding of fact. Though petitioner presented evidence that she researched and applied for other jobs, there is substantial evidence that petitioner's repeated requests were for a transfer to a well-ventilated, low-dust environment without open files.

Respondent asserts that since petitioner did not make additional suggestions for reasonable accommodations, petitioner breached her duty under N.C. Gen. Stat. § 168A-4 and thereby lost her right to reasonable accommodations. The Commission agreed in conclusion of law number three:

> [p]etitioner here failed to provide Respondent with any 'suggestions for such possible accommodations' which would have allowed her to return to her position as Processing Assistant IV with Respondent. Instead, when Respondent proposed their reasonable accommodations, based on the suggestions of Dr. LaForce, Petitioner consistently rejected the proposed accommodations as insufficient, and made no additional proposed accommodations for Respondent to implement, other than finding her another position. Petitioner clearly failed to comply with the duties imposed upon her by the HPPA, and is not entitled to its protection.

We hold this conclusion of law is affected by an error of law. "A qualified person with a disability requesting reasonable accommodation must:" (1) apprise her employer of the condition; (2) "submit any necessary medical documentation;" (3) "make suggestions for possible accommodations as are known to such person with a disability;" and (4) "cooperate in any ensuing discussion and evaluation aimed at determining possible or feasible accommodations." N.C. Gen. Stat. § 168A-4(a) (2001). Once the person has requested accommodation, the employer "shall investigate whether there are reasonable accommodations that can be made and make reasonable accommodations." N.C. Gen. Stat. § 168A-4(b) (2001). In this case, Patricia Hawkins, ("Hawkins"), the manager of employee relations for respondent, testified that upon rejecting respondent's offer of a filter and a mask that "Ms. Campbell should have come up with something else if there was anything else." Petitioner testified that she didn't make a counter-offer to respondent of other reasonable accommodations because "I didn't know of anything else to do." While respondent may have preferred for petitioner to make "additional proposed accommodations for Respondent to implement, other than finding her another position," petitioner's duty was merely to "make suggestions for such possible accommodations as are known to such person with a disability" and "cooperate" in the discussion aimed at determining reasonable accommodations. N.C. Gen. Stat. § 168A-4(a). The duty of investigating reasonable accommodations falls squarely upon respondent. N.C. Gen. Stat. § 168A-4(b). Therefore, we hold that

conclusion of law number three was affected by an error of law, and petitioner did not abdicate her right to reasonable accommodations either by refusing to accept respondent's offers or by failing to offer respondent additional suggestions for what she would consider a reasonable accommodation.

Finding of fact number ten details the 25 January 1999 meeting between petitioner and respondent, noting a letter

> informed [p]etitioner that Respondent was 'prepared to reasonably accommodate her medical needs in order to allow her to perform the duties of her job.' Specifically, Lt. Col. Brinson [petitioner's supervisor] indicated that Petitioner would be removed from the workplace if painting was to occur within the vicinity of her workplace. Petitioner would also be provided a facemask to wear to reduce exposure to dust.

Upon whole record review, we find substantial evidence supports this finding of fact. However, since these accommodations were not the final accommodations offered by respondent, we next address those accommodations respondent contends constitute reasonable accommodation of petitioner's disability.

[4] Finding of fact number fourteen and conclusion of law number five both conclude that Dr. LaForce "examined" petitioner and instructed that she increase her inhaler medication, monitor her peak flow measurements, use a HEPA filter, and wear a face mask. The supporting evidence is the report from Dr. LaForce. Conflicting evidence is the testimony of petitioner stating that Dr. LaForce did not examine her in any respect, but "just asked me questions" for approximately thirty minutes. Since the evidence here supports two "reasonably conflicting views," we must conclude that the superior court erred in determining there was not substantial evidence to support this finding of fact and conclusion of law by the Commission.

[5] The parties agree that the recommendations of Dr. LaForce, as delineated above, were the final accommodations offered to petitioner by respondent. The parties disagree as to whether these accommodations constitute reasonable accommodations, as defined by N.C. Gen. Stat. § 168A-3 (10)a. Regarding this matter, the superior court concluded that the Commission's finding of fact number two, "[r]espondent responded with reasonable accommodations," and number twenty-two, "[r]espondent did make reasonable accommodations for Petitioner as required by law," were unsupported by sub-

stantial evidence and arbitrary and capricious. The superior court also concluded that the Commission's conclusion of law number six, that "[b]ased on the recommendations of Dr. LaForce, Respondent did make reasonable accommodations," was unsupported by substantial evidence, arbitrary and capricious and affected by an error of law. All of these statements are mixed findings of fact and conclusions of law, and as such are review, in respective parts, by whole record review and *de novo*.

We previously set forth the definition of reasonable accommodations provided by N.C. Gen. Stat. § 168A-3(10)a. Generally, the term means those physical and job duty modifications that would accommodate the disabling conditions to enable the qualified person with a disability to return to work. N.C. Gen. Stat. § 168A-3(10)a. Reasonable accommodations do not require an employer to: hire additional employees; reassign duties to other employees without assigning the disabled employee compensable duties; reassign duties away from the disabled employee that would increase "the skill, effort or responsibility" of the other employees; alter seniority policies; provide personal accommodations (for example hearing aids or eyeglasses); make physical changes that would cost more than required by the statutory formula. N.C. Gen. Stat. § 168A-3(10)a. 1-7.

Having defined reasonable accommodations, we now consider whether the accommodations offered complied with the statutory obligation. The superior court found the Commission's conclusion that respondent had provided reasonable accommodations was unsupported by substantial evidence. The supporting evidence consists of a dust report and a report of Dr. LaForce's conclusions from Carolina Case Management.

First, we address the dust report. The report concludes that the dust level in petitioner's former office space was "very low." However, the dust level testing was performed in the break room and another desk located near Petitioner's desk, but Petitioner's desk area was not tested. Despite the fact that the main cause for concern was excessive dust from the open files, "at the time of sampling, boxes were not being opened to retrieve files." Therefore, this report does not provide adequate information regarding the dust level of petitioner's work environment.

Second, we address Dr. LaForce's report. Respondent did not provide Dr. LaForce's testimony, nor other evidence regarding how Dr. LaForce came to the conclusion that a HEPA filter, face mask,

increased asthma medication, and petitioner's monitoring of her peak flow measurements would be reasonable accommodations to enable petitioner to return to work. Petitioner testified:

> Q: Did he [Dr. LaForce] tell you on that occasion that he was going to recommend that you stay in the work site and you receive a mask and that a HEPA filtration system be installed? Did he [Dr. LaForce] tell you that?
>
> A: Yes, he—you know, he said he was basing it on what the—the dust report that was done through DOT and the recommendation that they had made, you know. And he also recommended for me to increase my medication, you know, to help me, you know, get back into the, you know, work environment and, you know, whatever the—you know, the people had said in the dust report, you know, to wear a mask and the HEPA filtration system.

This is the only evidence of why Dr. LaForce recommended these accommodations. Moreover, the report reads: "Dr. LaForce was cognizant of Ms. Campbell's fear of reoccurrence upon returning to this environment and stated he could give no guarantees that this would not happen again." Considering that the last asthma attack brought petitioner close to death and required a five-day hospitalization, this statement is less than reassuring of Dr. LaForce's position that his recommendations constitute reasonable accommodations to enable petitioner's return to work.

In addition to these concerns are the questions raised by Dr. Brown. Dr. Brown treated petitioner's January asthma attack and repeatedly recommended to respondent that petitioner "not be exposed to a work environment with paint fumes or excessive dust" and "not return to work to her old environment under any circumstances." Dr. Brown explained that the dust and fumes would exacerbate petitioner's asthma. Moreover, Dr. Brown wrote to respondent stating "I do not feel that the mask and the filtration system would help." Dr. Brown testified:

> [T]his statement wasn't taken lightly and this letter wasn't written lightly. This came after research of the literature. Based on people [with disabilities like those of petitioner], . . . it basically states that these air filtration systems can decrease the amount of allergens in the air, but basically it's transient and the person can still have an aggravated asthma attack. It does not have to always

be an allergen as to dust or dust mites per se, but the particulate matter coming from old records can be an irritant. . . . Based on the review of the literature, it basically could not tell me 100 percent that this would help this lady and she would not have a severe asthma attack. Based on that and based on the severity of her asthma attack when I saw her, based on my 12 years of seeing patients and seeing many, many, many asthmatics, this woman was very close to death in the emergency room. She was close to being what we call intubated, having to put in a tube for artificial respiration. So in my search of the literature, I did not find anything that would tell me 100 percent that a filtration system would prevent her from having an asthma attack. And, in my opinion, I didn't think it would be unreasonable to put her in another environment that did not have the particulate matter that would be coming from old records.

Moreover, Dr. Brown explained to petitioner that the "HEPA filtration system would not benefit me unless the whole area is filtered. . . . the machine is like a miniature air conditioner that is cold . . . it could enhance the probability of another asthma attack." There is no response presented from Dr. LaForce to address the concerns of Dr. Brown. Moreover, petitioner expressed the following concerns to Dr. LaForce regarding his recommended treatment:

THE COURT: So, did the doctor ask you what medications you were taking?

A: Yes, he asked me what medications I was taking. He asked me to, you know, increase it. And I let him know that asthma medicine, you know, causes you to be nervous. And, you know, kind of hinders you from even performing your job the way you need to whenever you're real nervous and tense.

. . .

Q: Did you express to him [Dr. LaForce] reservations about the filtration system and the mask?

A: Yes. For the mask, it's the problem like I said to, you know, breathe all day in the mask because they have—depending on what kind of mask it is, you can still smell stuff coming through the mask because I've tried several, you know, kind of masks, and that would be hard to do all day. And the HEPA filter, it was just to be put at my desk, and that was confining me to one

area. You know, it would just eliminate the dust in the area, not all over the building.[1]

Again, there is no evidence that Dr. LaForce's recommendation addressed the concerns of petitioner. Without an explanation for why Dr. LaForce's treatment constitutes reasonable accommodations despite these concerns, we cannot find upon review of the whole record that substantial evidence supports the conclusion that his recommendations would have enabled petitioner to return to work. Therefore, we hold the superior court was correct in determining that these findings of fact and conclusions of law were not supported by substantial evidence.

Having found the Commission's decision was supported by substantial evidence in part, and unsupported by substantial evidence in part, we affirm in part and reverse in part the superior's court's order and remand to the superior court for subsequent remand to the Commission with direction to order the reinstatement of petitioner and such other relief to which petitioner may be entitled consistent with this opinion.

Affirmed in part, reversed in part, remanded.

Judges TIMMONS-GOODSON and HUDSON concur.

Judges TIMMONS-GOODSON and HUDSON concurred in this opinion prior to 31 December 2002.

---

1. Petitioner testified on cross examination that she spoke to her case manager at Carolina Case Management regarding the option that respondent filter the entire building, but she said "she had already talked to people within DOT and they said that they was not going to get a filtration system for the whole building. It's not in writing, but that's what I was told on the phone, that they were only getting one for my desk because it cost too much." Respondent clarified that she never spoke to anyone from DOT directly, and petitioner admitted that she only spoke to the case manager, who "was hired by DOT," but not a DOT employee.