Donnie R. FAIRCLOTH, Plaintiff,

v.

DUKE UNIVERSITY, Defendant.

No. 1:02 CV 00694.

United States District Court,
M.D. North Carolina.

April 10, 2003.

Michael D. Levine, Levine Stewart and Davis, Chapel Hill, NC, for Donnie R. Faircloth.

Charles Matthew Keen, Ogletree Deakins Nash Smoak & Stewart, PC, Raleigh, NC, for Duke University.

### ORDER

OSTEEN, District Judge.

On February 19, 2003, the United States Magistrate Judge's Recommendation was filed and notice was served on the parties pursuant to 28 U.S.C. § 636. No objections were filed within the time limits prescribed by Section 636.

Therefore, the Court need not make a *de novo* review and the Magistrate Judge's Recommendation is hereby adopted.

**IT IS THEREFORE ORDERED AND ADJUDGED** that defendant's motion to dismiss (docket no. 5) is denied as to plaintiff's first two claims for relief and granted as to its third and fourth claims for relief.

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

ELIASON, United States Magistrate Judge.

This case comes before the Court on defendant's motion to dismiss plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff opposes that motion, which has been fully briefed and is now ready for decision.

### Facts

In plaintiff's complaint, he states that he was employed by defendant as a painter for over 38 years. In June of 1993, plaintiff began to suffer from asthma attacks which he claims were caused by exposure to second-hand cigarette smoke at work. Overall, plaintiff reports that his asthma is fairly well controlled. He uses a medicat-

ed inhaler once in the morning, once in the afternoon, and during any sudden asthma attacks. However, plaintiff claims that exposure to smoke sets off attacks which his inhaler does little to alleviate. This is true whether the smoke comes from cooking, tobacco, or burning leaves or brush.

Plaintiff states that both he and his doctors notified defendant as early as 1993 that he must avoid exposure to tobacco smoke. Plaintiff also claims that, despite the fact that defendant has policies declaring that it is a smoke-free workplace, his fellow employees continued to smoke in his presence. Plaintiff alleges that when he complained, his co-workers and supervisors "chided," "chastised," and "harassed" him and told him that he should find another job or retire early. On February 28, 2001, three years earlier than he had intended, he did retire early. He states that his age and the level of benefits he was receiving from defendant made it impossible or impractical for him to find another job.

### Claims

Based on the facts set out above, plaintiff has raised four claims for relief. His first claim states that his asthma is a disability which limits the major life functions of working and breathing, that he remained able to perform the essential functions of his job as a senior painter if he was in a smoke-free environment, and that defendant violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. (the ADA), when it failed to grant him the reasonable accommodation of a smoke-free working environment. Next, he claims that defendant also created a hostile working environment in violation of the ADA when it failed to prevent his co-workers from smoking in his presence and when it allowed his co-workers and supervisors to harass and chastise him concern-

ing his condition. Plaintiff's third claim is one made under state law for constructive discharge. He contends that by allowing smoking in a smoke-free environment, defendant created intolerable conditions which forced him to retire early. Finally, plaintiff raises a state law claim for assault and battery based on his exposure to second-hand smoke while at work. Defendant contends that all of these claims must be dismissed.

### Standards for Dismissal

Defendant's motion to dismiss cannot succeed " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir.), *cert. denied*, 510 U.S. 828, 114 S.Ct. 93, 126 L.Ed.2d 60 (1993), *quoting Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Further, the Court must assume that the allegations in the complaint are true and construe them in the light most favorable to plaintiff. *Id.*

### Claim One

The centerpiece of plaintiff's complaint is undoubtedly his contention that he is disabled under the ADA and that defendant violated the ADA by refusing to accommodate him with a smoke-free working environment. In order to establish this claim, plaintiff must eventually show (1) that he is an individual with a disability as defined in the ADA, (2) that defendant knew this, (3) that he could have performed the essential functions of his job with reasonable accommodations, and (4) that defendant failed to make such accommodations. *Rhoads v. Federal Deposit Ins. Corp.*, 257 F.3d 373, 387 (4th Cir. 2001), *cert. denied*, 535 U.S. 933, 122 S.Ct. 1309, 152 L.Ed.2d 219 (2002). Defendant contends that, under the facts stated in the

complaint, plaintiff cannot prevail because he is not disabled, did not need a reasonable accommodation to perform the essential functions of his job, and did not ask for a reasonable accommodation.

■ In order to be disabled under the ADA, a person must show that he (1) has a physical impairment which substantially limits a major life activity, (2) has a record of having such an impairment, or (3) is regarded as having such an impairment by his employer. 42 U.S.C. § 12102(2). Plaintiff alleges in his complaint that his asthma substantially limits his ability to perform the major life functions of working and breathing.

Defendant argues that plaintiff cannot prevail because plaintiff's asthma, as described in the complaint, does not substantially limit his working or breathing. However, defendant's argument goes beyond the scope of a motion to dismiss. Defendant has given no case showing that asthma can never limit a person's ability to work and breathe to the point that the person is disabled. In fact, as other courts have noted, asthma and the extent of its effects vary greatly from person to person. Therefore, although a court may easily conclude that a plaintiff's asthma is not a disability in a particular case, the determi-

nation of whether it constitutes a disability or not is necessarily made on a case-by-case basis based on facts presented to the Court. *United States v. Sherman,* 53 F.3d 782, 787–788 (7th Cir.1995); *Tangires v. Johns Hopkins Hosp.,* 79 F.Supp.2d 587, 595 (D.Md.), *aff'd,* 230 F.3d 1354, 2000 WL 1350647 (4th Cir.2000). Factual determinations such as this are not suitably made at the motion to dismiss stage of a case.

Here, plaintiff has made certain specific factual allegations regarding the effects of his asthma on his ability to breath and work. These facts go beyond his basic allegations of disability. Defendant argues, and is likely correct, that these facts alone, without further evidence of impediment, are insufficient to establish that plaintiff is disabled. However, defendant ignores the fact that plaintiff is not forever limited by the facts in his complaint. The Federal Rules of Civil Procedure require only notice pleading, not that every fact that a plaintiff will eventually base his claim upon be listed in his complaint. Plaintiff has properly pled the elements of an ADA claim. The Court will not inquire as to whether or not he will later be able to support and establish these claims with evidence. That is a determination more suitable for summary judgment.[1] For

---

1. Defendant relies heavily on the case of *Saunders v. Baltimore County, Maryland,* 163 F.Supp.2d 564 (D.Md.2001). Certainly, there are factual similarities between that case and the case at bar. *Saunders* involved a correctional officer with asthma who alleged that his working environment caused him problems. The District Court dismissed his case under Fed.R.Civ.P. 12(b)(6). *Saunders* does not help defendant to prevail here for two reasons. First, there are some factual differences. For instance, the plaintiff in *Saunders* did not allege any problems with asthma outside of his work environment. *Id.* at 569. Second, this Court has great concern that the court in *Saunders* did not strictly adhere to the proper standards for a motion to dismiss. At several points it seems to require plaintiff

to "demonstrate" his claims, something that ordinarily does not occur until summary judgment. Also, it seems to require extensive fact pleading and draws factual inferences against the plaintiff. *Id.* Outside of *Saunders,* defendant has cited mainly summary judgment case law. This is another indication that determinations of disability connected with asthma are often best left for summary judgment.

While the Court will not use *Saunders* to dismiss plaintiff's ADA claims, plaintiff should not ignore that case or the other cases cited by defendant. They state the general law on asthma and disability quite well and should serve to advise plaintiff concerning the stan-

now, given the variable nature of asthma, the Court cannot say that it appears beyond doubt that plaintiff can prove some set of facts that will establish that he is disabled under the ADA. It may be quite doubtful for all of the reasons stated by defendant, but it is not beyond doubt.[2]

■ In addition to arguing that plaintiff has not sufficiently alleged that he is disabled, defendant also contends that it should prevail because plaintiff was able to perform the essential functions of his job without any accommodation. Once again, however, defendant seeks to prematurely impose summary judgment standards. The only case it cites in support of this argument, deals with summary judgment, not a motion to dismiss. *See Harmer v. Virginia Electric and Power Co.*, 831 F.Supp. 1300 (E.D.Va.1993). Plaintiff has alleged that his asthma, combined with the smoke in his working environment, made it difficult for him to perform his job to the point that he was forced into early retirement. This is sufficient to withstand defendant's motion.

■ Defendant's final argument in favor of dismissing plaintiff's first claim for relief is that his request to have defendant enforce its smoke-free workplace policy is not a reasonable accommodation. Defendant claims that just having the policy, even if it is not perfectly enforced, is enough, and notes that "[p]laintiff has not suggested any ways that Duke could do more to enforce its policy." (Def. Brf. at 9) What accommodation would be "reasonable," whether defendant made sufficient efforts to enforce its policy if that is determined to be a reasonable accommodation,

and what, if anything, defendant could have done to better enforce its policy are all issues of fact which must be examined at summary judgment. Like defendant's previous arguments, this one fails. Its motion to dismiss plaintiff's first claim for relief should be denied.

### *Claim Two*

■ Plaintiff's next claim for relief states that he was chastised and harassed about his disability by his co-workers and supervisors, who also intentionally smoked in his presence. Based on this, he raises a hostile work environment claim under the ADA. *See generally Fox v. General Motors Corp.*, 247 F.3d 169 (4th Cir.2001). Defendant contends that this claim must be dismissed because (1) plaintiff is not disabled and (2) plaintiff has not alleged facts sufficient to show a hostile work environment.

Once again, defendant's arguments are unavailing. For the reasons discussed previously, defendant's claim that plaintiff is not disabled fail at this time. As for its claim that plaintiff has not set out harassment sufficient to support a hostile environment claim, defendant is once again seeking to hold plaintiff to an unnecessarily high standard of pleading. Plaintiff need not set out every instance of harassment at this stage of the proceedings and the fact that he has chosen not to will not result in the dismissal of his claim. How pervasive and frequent the harassment was and the exact nature of the words used against plaintiff will be matters to be developed during discovery and examined at summary judgment.

---

dards that he will have to meet in order to survive summary judgment.

**2.** The parties also disagree over whether or not plaintiff's complaint is sufficient to state a claim on the theory that defendant believed

plaintiff to be disabled. However, because the Court finds that plaintiff has sufficiently alleged that he actually was disabled, the Court does not need to address this issue at this time.

### Claim Three

■ Plaintiff's third claim for relief is one for constructive discharge raised under North Carolina law. If a plaintiff's claims arise under state law, special rules apply. When state law is unclear, the federal court must rule in such a manner as it appears the highest state court would rule if presented with the issue. Where the state's highest court has not decided the particular issue, the federal court should examine the rulings of the lower state courts. Rulings of the lower courts may be considered as persuasive evidence of state law, but they are not binding on the federal court should it be convinced the highest court would rule to the contrary. *Sanderson v. Rice,* 777 F.2d 902, 903 (4th Cir.1985), *cert. denied,* 475 U.S. 1027, 106 S.Ct. 1226, 89 L.Ed.2d 336 (1986). Furthermore, the federal court must rule on state law as it exists, as opposed to surmising or suggesting an expansion of state law. *Burris Chemical, Inc. v. USX Corp.,* 10 F.3d 243 (4th Cir. 1993).

■ Here, defendant contends that plaintiff's claim of constructive discharge must be dismissed because the North Carolina courts have never recognized the tort of constructive discharge. As defendant correctly points out, the North Carolina Court of Appeals has twice made statements to this effect. *See Doyle v. Asheville Orthopaedic Associates,* 148 N.C.App. 173, 174, 557 S.E.2d 577, 577 (2001), *rev. denied,* 355 N.C. 348, 562 S.E.2d 278 (2002); *Graham v. Hardee's Food Systems, Inc.,* 121 N.C.App. 382, 385, 465 S.E.2d 558, 560 (1996).

Initially, plaintiff's only response to defendant was to cite to *Graham* and state that North Carolina courts have "considered" constructive discharge. In *Graham,* the court noted that the tort had not been recognized, but went on to discuss what the elements would be if it were to recognize the tort and to explain that the plaintiff in that case did not meet them in any event. The problem for the plaintiff in the present case was that the court in *Graham* still did not recognize the tort.

Following the briefing of defendant's motion to dismiss, plaintiff submitted what he claims is recent additional authority supporting his constructive discharge claim. *See Campbell v. North Carolina Department of Transportation, Division of Motor Vehicles,* 155 N.C.App. 652, 575 S.E.2d 54 (2003). Although plaintiff is correct that the case does address the concept of constructive discharge in a narrow setting, the setting is so narrow that it does not aid plaintiff's cause.

*Campbell* deals with a plaintiff who was a state employee with asthma. According to her claims, when the State of North Carolina refused to accommodate her asthma with an appropriate working environment, her ailment forced her to resign. She then filed claims against the State under the ADA as well as a state statute covering state employees and containing provisions similar to those in the ADA. See N.C. Gen.Stat. § 126–1, *et seq.* Because she was a state employee, Ms. Campbell was forced to take her case before an Administrative Law Judge (ALJ), and then to the State Personnel Commission, before bringing it to the North Carolina courts. Although the ALJ found in Ms. Campbell's favor, the Personnel Commission denied her claims for several reasons. Among these was a finding that a person suing under the state statute involved had to be terminated to raise a claim. Because plaintiff resigned, the Personnel Commission concluded that she could not meet the termination requirement.

Once Ms. Campbell reached the court system with her claims, the Personnel

Commission's holding regarding discharge was reversed. The reversal was then upheld by the North Carolina Court of Appeals which allowed her claim to proceed based on a constructive discharge theory. However, the Court of Appeals was entirely clear in defining the scope of its holding when it stated that "[w]e hold a constructive discharge constitutes a termination for the purposes of interpreting N.C. Gen. Stat § 126–34.1." *Campbell* at 60. Therefore, *Campbell* means only that a constructive discharge can satisfy the termination element of a specific statutory claim raised under state law. It neither supports the idea that North Carolina law recognizes a general independent tort based on constructive discharge, nor conflicts with the previous statements in *Doyle* and *Graham* that North Carolina courts have never recognized such a tort.[3] Under these circumstances it is not the job of this Court to expand North Carolina law by allowing claims alleging a tort that its courts have not recognized. For this reason, plaintiff's claim for constructive discharge should be dismissed.[4]

### *Claim Four*

 Plaintiff's final claim is one for assault and battery. This claim also arises under state law. As even plaintiff points out, assault or battery claims based on exposure to cigarette smoke definitely cannot be raised under North Carolina law absent physical injury. If such injury is present, their status is unclear. *See McCracken v. Sloan*, 40 N.C.App. 214, 217, 252 S.E.2d 250, 252 (1979). Much like plaintiff's claim for constructive discharge, it would appear that his claim for assault and battery based on smoke exposure has not yet been allowed by the North Carolina courts. This alone is enough to support dismissal. However, there is an additional reason.

Any assault and battery committed against plaintiff by his co-workers occurred, at the latest, on February 28, 2001, the date he retired. As of that date, the statute of limitations for assault and battery in North Carolina was one year. N.C. Gen.Stat. § 1–54 (2000). Plaintiff did not file his lawsuit until August 22, 2002, well beyond the one-year limit.

Plaintiff asserts that his claim is not barred because, on October 1, 2001, and prior to the running of the one-year statute of limitations, the North Carolina legislature amended its statutes to include a three-year statute of limitations for assault and battery. N.C. Gen.Stat. § 1–52(19). Plaintiff's claim was filed within three years of the last possible date of any assault and battery upon him. Plaintiff be-

---

3. It is worth noting that, to the extent any of the cases cited by plaintiff might indicate a possible willingness by the North Carolina Court of Appeals to recognize constructive discharge as a tort in the future, all of these cases involve the Court of Appeals, as opposed to the North Carolina Supreme Court. So far as the parties indicate, the Supreme Court has never hinted at such an inclination. This is a further indication that any recognition of the tort by this Court would be an improper extension of state law.

4. Defendant also claims that, at the time plaintiff retired, he was covered under a collective bargaining agreement and that any constructive discharge claim would be preempted by the Labor Management Relations Act, 29 U.S.C. § 185(a). *See McCormick v. AT & T Technologies, Inc.*, 934 F.2d 531 (4th Cir.1991), *cert. denied*, 502 U.S. 1048, 112 S.Ct. 912, 116 L.Ed.2d 813 (1992). Defendant's argument might well have proved correct had the claim proceeded. For now, however, plaintiff does not allege in his complaint that he was under a collective bargaining agreement. It is not clear where in the record defendant draws any support for its assertion that plaintiff was covered by a collective bargaining agreement. Certainly, it has not given a cite for this information.

lieves that, even though any assault and battery was committed before the change in law, the change should still apply to his claim.

■ The actual language of the applicable statute is silent as to whether it was intended to have a retroactive effect. However, at the same time that it amended the statute of limitations for assault and battery, the North Carolina legislature did include a note stating specifically that the amendment was only intended to claims arising on or after October 1, 2001, the effective date of the amendment. *Id.* In North Carolina, a cause of action is deemed to have accrued when a party is at liberty to sue based on an injury. *Raftery v. Wm. C. Vick Construction Co.*, 291 N.C. 180, 230 S.E.2d 405 (1976). In no way could plaintiff's cause of action for assault and battery be said to have accrued or arisen on or after October 1, 2001. Therefore, his claim is barred by the statute of limitations and should be dismissed.[5]

**IT IS THEREFORE RECOMMENDED** that defendant's motion to dismiss (docket no. 5) be denied as to plaintiff's first two claims for relief and granted as to his third and fourth claims for relief.

---

5. Defendant also contends that plaintiff's claim is barred by the Workers' Compensation Act. The Court will not reach this issue given that it has already found that plaintiff's claim is not recognized under North Carolina law and that, if it is recognized, it is barred by the applicable statute of limitations.