REBECCA TAYLOR, EMPLOYEE, PLAINTIFF v. CAROLINA RESTAURANT GROUP, INC., EMPLOYER, THE HARTFORD, CARRIER, DEFENDANTS

No. COA04-981

(Filed 7 June 2005)

**Workers' Compensation— disability—causation—findings and evidence**

The Industrial Commission's findings in a workers' compensation case are binding on appeal when they are supported by competent evidence, even if the evidence might have supported contrary findings. Here, plaintiff slipped on degreaser and struck her knee on a wall while working at Wendy's. Defendants contended that the record was entirely devoid of evidence supporting findings that plaintiff would be able to work but for her knee injury and that her failed knee replacement caused her disability (rather than a subsequent injury); however, there was in fact evidence supporting the Commission's findings.

Judge Tyson dissenting.

**TAYLOR v. CAROLINA REST. GRP., INC.**

[170 N.C. App. 532 (2005)]

Appeal by Defendants from Opinion and Award of the North Carolina Industrial Commission entered 2 April 2004. Heard in the Court of Appeals 22 March 2005.

*Poisson, Poisson, Bower & Clodfelter, PLLC, by E. Stewart Poisson and Fred D. Poisson, Jr., for plaintiff-appellee.*

*Cranfill, Sumner & Hartzog, L.L.P., by Jaye E. Bingham and Erin F. Taylor, for defendant-appellants.*

WYNN, Judge.

Where the Industrial Commission's findings of fact are supported by any competent evidence, those findings are binding on appeal. *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). Here, Defendants contend that there was no competent evidence to support the Industrial Commission's findings that Plaintiff's right knee injury caused her disability. We disagree and find that competent evidence supports the Industrial Commission's findings of fact, which in turn support its conclusions of law.

The record reflects that Plaintiff Rebecca Taylor was employed by Carolina Restaurant Group as an attendant to the hot bar of a Wendy's restaurant in July 1994. Additionally, at that time, Ms. Taylor drove a school bus (her primary employment), and cleaned houses. On 22 July 1994, in the course of her employment with the Carolina Restaurant Group, Ms. Taylor slipped on degreaser at Wendy's and struck her right knee on a wall. Ms. Taylor attempted to return to work with the Carolina Restaurant Group and her bus driving employment following the accidental injury but was unable to perform because she "couldn't take the pain." As a consequence of the July 1994 fall, Ms. Taylor underwent right knee replacement surgery in 1996. Since the July 1994 injury, Ms. Taylor has also undergone several arthroscopic surgeries, *inter alia*, to remove scar tissue from her right knee. Ms. Taylor's primary treating physician is Ward S. Oakley, Jr., M.D.

The record tends to show that while Ms. Taylor's condition eventually improved somewhat, she experienced continuing pain and swelling in the right knee. On 23 June 1998, Ms. Taylor was treated by Dr. Oakley for pain in her right knee. Dr. Oakley's assessment was "[r]ight knee pain" and "[r]ight knee failure of implant." Defendants then referred Ms. Taylor to David Mauerhan, M.D., of The Miller Clinic for further evaluation. Dr. Mauerhan recommended no further

surgery and that Ms. Taylor should continue to try to work. Dr. Mauerhan also noted as his impression:

> Continued pain following total knee replacement on the right knee. This unfortunate lady has had continued pain when reviewing her history from her very initial problem on through to the present. No surgical procedure including her arthroscopies nor the total knee have given her significant or continued relief.

Dr. Mauerhan also found that Ms. Taylor had a fifty-percent permanent disability and "a painful total knee replacement which is giving her difficulty."

In January 2000, Ms. Taylor fell on black ice in the parking lot of Richmond Community College, where she was employed as a janitor. (Ms. Taylor was at that time no longer working for the Carolina Restaurant Group.) Ms. Taylor stated that, when she realized she was going to fall, she guarded her right knee and took the blow to the left knee. The fall injured the left knee, which became increasingly painful. On 27 April 2000, Dr. Oakley performed an arthroscopic revision to the left knee. On 2 October 2001, Dr. Oakley assigned a twenty-percent impairment rating to the left knee and issued standard restrictions following the surgery to the left knee. On 13 December 2001, Ms. Taylor entered a settlement agreement with Richmond Community College for all liability under the Workers' Compensation Act.

By the Fall 2001, Ms. Taylor's left knee had healed well and required only light, if any, work restrictions. However, her right knee had become ever more painful. In September 2001, she reported to Dr. Oakley that she was experiencing increased pain, popping, and swelling in her right knee. Dr. Oakley noted that "she didn't relate it to any particular injury or trauma . . . ." In performing an arthroscopic surgery on her right knee in 2002, Dr. Oakley found shedding and plastic deformation of the stem, or weight-bearing part, of her knee replacement appliance. Dr. Oakley stated that such deterioration of the plastic appliance was "not uncommon," and would lead to more pain and a need for the deformed part to be replaced. Moreover, Dr. Oakley indicated that knee replacements typically do not last as long in younger, overweight persons, such as Ms. Taylor, and that there is a twenty- to thirty-percent chance of an appliance failing within ten years. Dr. Oakley also stated that he thought there was a better than fifty-percent chance that, within the next five years, the deformed part of Ms. Taylor's knee appliance would need to be replaced.

Ms. Taylor's 1994 and 2000 injury claims were consolidated before the Industrial Commission, and on 3 October 2002, Deputy Commissioner Phillip A. Holmes found, *inter alia,* that Ms. Taylor's 2000 accident resulted in her total disability, her prior right knee injury was aggravated as a consequence of her 2000 injury, and the aggravation of the right knee injury was compensable, as was her total disability, but that Ms. Taylor relinquished her right to recover from Richmond Community College under the settlement agreement she entered with them. Ms. Taylor appealed to the full Industrial Commission, which, with Chairman Lattimore dissenting, reached the opposite conclusions, determining that Ms. Taylor's 1994 right knee injury caused her disability and that Defendants were liable for her disability and medical compensation. Defendants appeal.

On appeal, our review of the Commission's Opinion and Award is "limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese,* 352 N.C. at 116, 530 S.E.2d at 553. The Industrial Commission is the "sole judge of the weight and credibility of the evidence," and this Court " 'does not have the right to weigh the evidence and decide the issue on the basis of its weight.' " *Adams v. AVX Corp.,* 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (quoting *Anderson v. Constr. Co.,* 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)). Indeed, "so long as there is some 'evidence of substance which directly or by reasonable inference tends to support the findings, this Court is bound by such evidence, even though there is evidence that would have supported a finding to the contrary.' " *Shah v. Howard Johnson,* 140 N.C. App. 58, 61-62, 535 S.E.2d 577, 580 (2000) (quoting *Porterfield v. RPC Corp.,* 47 N.C. App. 140, 144, 266 S.E.2d 760, 762 (1980)), *disc. review denied,* 353 N.C. 381, 547 S.E.2d 17 (2001).

" 'In order to obtain compensation under the Workers' Compensation Act, the claimant has the burden of proving the existence of his disability and its extent.' " *Saums v. Raleigh Cmty. Hosp.,* 346 N.C. 760, 763, 487 S.E.2d 746, 749 (1997) (quoting *Hendrix v. Linn-Corriher Corp.,* 317 N.C. 179, 185, 345 S.E.2d 374, 378 (1986)). "Under the Workers' Compensation Act, disability is defined by a diminished capacity to earn wages, not by physical infirmity." *Id.* at 764, 487 S.E.2d at 750 (citing N.C. Gen. Stat. § 97-2(9) (1991)). The employee may show disability in one of four ways:

(1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Knight v. Wal-Mart Stores, Inc.*, 149 N.C. App. 1, 7, 562 S.E.2d 434, 439 (2002), *aff'd*, 357 N.C. 44, 577 S.E.2d 620 (2003) (quotation omitted). Further, "[i]n determining if plaintiff has met this burden, the Commission must consider not only the plaintiff's physical limitations, but also his testimony as to his pain in determining the extent of incapacity to work and earn wages such pain might cause." *Webb v. Power Circuit, Inc.*, 141 N.C. App. 507, 512, 540 S.E.2d 790, 793 (2000) (citing *Matthews v. Petroleum Tank Serv., Inc.*, 108 N.C. App. 259, 265, 423 S.E.2d 532, 535 (1992)), *cert. denied*, 353 N.C. 398, 548 S.E.2d 159 (2001); *see also Knight*, 149 N.C. App. at 7-8, 562 S.E.2d at 439-40 (same).

Here, Defendants contend, that "[t]he Record is *entirely* devoid of any evidence to support these findings" that "(1) '[w]ere it not for the right knee injury, plaintiff would be able to work,' and (2) plaintiff's failed knee replacement caused her disability . . . ." We disagree.

Defendants have not excepted to the Industrial Commission's finding that in July 1994, "plaintiff sustained an accidental injury to her right knee arising out of and in the course of employment with Wendy's . . . ." Defendants also have not excepted to the fact that Defendant's carrier, The Hartford, "eventually paid all of the medical procedures on the right knee." These findings are thus binding. *Pollock v. Reeves Bros., Inc.*, 313 N.C. 287, 292, 328 S.E.2d 282, 286 (1983) (holding that where defendants do not except to finding in a workers' compensation case, it is binding on appeal); *Creel v. Town of Dover*, 126 N.C. App. 547, 552, 486 S.E.2d 478, 480-81 (1997) ("[W]hen there are no exceptions to the [Industrial] Commission's findings, they are binding on appeal." (citation omitted)).

Moreover, the record shows some competent evidence to support the Industrial Commission's findings that, as a result of her right knee injury, Ms. Taylor experienced pain and swelling that ultimately

caused her total disability. For example, Dr. Oakley testified during his deposition that there were "recurrent episodes of discomfort, [and] swelling" after Ms. Taylor's knee replacement, that Ms. Taylor reported "persistent discomfort" in her right knee, that after her knee replacement Ms. Taylor was "struggling with it . . . ." Dr. Mauerhan, Defendants' doctor, also noted in 1998 that Ms. Taylor complained of "global knee pain. She says it hurts her all the time. There is no particular time when it doesn't hurt." Dr. Mauerhan had the impression that "[n]o surgical procedure . . . ha[d] given her significant continued relief," and found that Ms. Taylor "probably will have chronic pain in the knee." The Industrial Commission made a finding, to which Defendants did not except and which is thus binding, that Dr. Mauerhan found Ms. Taylor's "chronic right knee pain" would be "permanent and progressive." Ms. Taylor testified, *inter alia*, that her right knee "stayed in pain, it stayed swollen[,]" that her right knee pain "got steadily worse[,]" and that her knee "get[s] cramps[,]" needs to be moved all the time, and is painful. Ms. Taylor also testified that, *inter alia*, if her right leg were normal and not painful, and taking into consideration the injury to her left knee, she believes she could perform her former job at Richmond Community College, which she now cannot perform; she testified that, "if my right knee was normal, I could do it . . . ." Dr. Oakley confirmed that Ms. Taylor's belief that she could return to work but for her right knee troubles was possible.

Additionally, the record shows some competent evidence to support the Industrial Commission's findings that Ms. Taylor's right knee replacement failed and deteriorated. For example, as early as June 1998, *i.e.*, well before Ms. Taylor's January 2000 fall, Dr. Oakley's assessment of Ms. Taylor's condition was "[r]ight knee failure of implant." Moreover, the Industrial Commission made a finding not excepted to and thus binding on appeal that Dr. Mauerhan, as early as 1998, found Ms. Taylor's right knee condition to be "permanent and progressive." Dr. Mauerhan also noted that, while he believed Ms. Taylor could still work in 1998, she had at that time a permanent fifty-percent impairment in her right knee. Dr. Oakley testified extensively as to shedding and deformation of part of Ms. Taylor's right knee replacement appliance. Dr. Oakley found shedding and plastic deformation of the stem, or weight-bearing part, of Ms. Taylor's right knee replacement appliance and stated that such deterioration of the plastic appliance was "not uncommon[.]" Dr. Oakley stated that the shedding and deformation would lead to more pain and a need for the deformed stem to be replaced. Moreover, Dr. Oakley indicated

that knee replacements typically do not last as long in younger, over-weight persons, such as Ms. Taylor, and that generally there is a twenty- to thirty-percent chance of an appliance failing within ten years. Dr. Oakley testified there was a better than fifty-percent chance that, within the next five years, the deformed part of Ms. Taylor's knee appliance would need to be replaced. And Dr. Oakley testified that, because of her right knee, Ms. Taylor could not: work on her knees, kneel down, squat, climb more than a few steps, sit for prolonged periods, stand for prolonged periods, or do continuous walking.

Moreover, the record shows some competent evidence to support the Industrial Commission's findings that Ms. Taylor is totally disabled. For example, Dr. Oakley, in his deposition, testified that, with respect to Ms. Taylor's right knee, Ms. Taylor would not be able to: work on her knees, kneel down, squat, climb more than a few steps, sit for prolonged periods, stand for prolonged periods, or do continuous walking. Dr. Oakley testified that Ms. Taylor would not be able to sit for longer than ten to fifteen minutes. Ms. Taylor testified that, inter alia, if her right leg were normal and not painful, and taking into consideration the injury to her left knee, she believes she could perform her former job at Richmond Community College, which she now cannot perform; she testified that, "if my right knee was normal, I could do it . . . ." Dr. Oakley confirmed that Ms. Taylor's belief that she could return to work but for her right knee troubles was possible. Further, Ms. Taylor, now fifty-seven years old, testified that she attended school only through the tenth grade, has never had an office job, is not qualified for such a job, and has worked her whole life in physical labor positions that she can no longer perform.

We further find in the record some competent evidence to support the Industrial Commission's findings that the cause of Ms. Taylor's disability was not the later left knee injury. For example, Dr. Oakley testified that Ms. Taylor "didn't relate [her right knee's popping and tenderness] to any particular injury or trauma that I'm aware of, at least none that my notes associate with it." Dr. Oakley testified that, while it would not have been unusual for Ms. Taylor to have had to rely more on her right leg as a consequence of the left knee injury, his records did not support that testimony. Dr. Oakley also indicated that Ms. Taylor's left knee had healed well and required only light, if any, work restrictions.

Defendants point in particular to (1) Ms. Taylor's statement that her right knee "got worse. It's got more painful from—I guess, from

having to switch back and forth on legs like I have to do—had to do []" after her left knee surgery, (2) Ms. Taylor's statement that her right knee symptoms worsened after her left knee surgery because she "was putting more weight on it, and . . . that's when my knee really started giving me a lot of problems[,]" and (3) Dr. Oakley's testimony that he viewed Ms. Taylor's injury to her left knee as "the straw that breaks the—you know, the camel[]" and "[j]ust one more little thing just kind of pushed her over the edge[]" to disability. While this and other evidence might have supported findings contrary to those made by the Industrial Commission, that is not of consequence. Because there is some evidence that directly or by reasonable inference tends to support the Industrial Commission's findings, this Court is bound, even though there is evidence that would have supported a finding to the contrary. *Shah*, 140 N.C. App. at 61-62, 535 S.E.2d at 580 ("Where there is evidence of substance which directly or by reasonable inference tends to support the findings, this Court is bound by such evidence, even though there is evidence that would have supported a finding to the contrary.") (quotation omitted).

In support of their argument that Ms. Taylor's disability was caused by her January 2000 fall and not her 1994 injury, Defendants rely heavily on *Wilder v. Barbour Boat Works*, 84 N.C. App. 188, 352 S.E.2d 690 (1987). This case is, however, inapposite. In *Wilder*, unlike here, the plaintiff sustained a subsequent injury to the same knee that had previously undergone a knee replacement. This Court found that "the evidence clearly indicates that plaintiff's [subsequent] injury aggravated a latent condition" and that "uncontradicted evidence" showed the plaintiff's "disability was the result of a work-related injury which aggravated an existing infirmity." *Id.* at 196-97, 352 S.E.2d at 695. Here, in contrast, the January 2000 injury was not to the same knee that Ms. Taylor injured in the course of her employment with the Carolina Restaurant Group but rather to her other knee. Moreover, as discussed above, there is not "uncontradicted evidence" that "clearly indicates" that the January 2000 fall caused Ms. Taylor's disability.

In sum, we do not find, as Defendants contend, that "[t]he Record is *entirely* devoid of any evidence to support" its findings that "(1) '[w]ere it not for the right knee injury, plaintiff would be able to work,' and (2) plaintiff's failed knee replacement caused her disability . . . ." Moreover, we hold that the Industrial Commission's findings of fact support its conclusions of law and award.

Defendants also contend that the conclusions of law and award are "not supported by the applicable law." However, in their assignments of error, Defendants excepted to the conclusions and award only on the basis that the conclusions of law were "not supported by competent Findings of Fact" and that the award was "not supported by the Findings of Fact and the Conclusions of Law." This argument is therefore not properly before us. N.C. R. App. P. 10(a) ("the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal"); *Dep't of Transp. v. Elm Land Co.*, 163 N.C. App. 257, 264, 593 S.E.2d 131, 136 (quoting N.C. R. App. P. 10(a) and refraining from addressing an argument regarding a conclusion of law where the assignment of error in the record excepted to the conclusion under a different theory), *disc. review denied*, 358 N.C. 542, 599 S.E.2d 42 (2004).

For the foregoing reasons, we affirm the Industrial Commission's Opinion and Award.

Affirmed.

Judge ELMORE concurs.

Judge TYSON dissents.

Tyson, Judge dissenting.

The majority's opinion holds "some" competent evidence exists to support the Commission's findings of fact, which in turn support its conclusions of law, and affirms the Commission's opinion and award. There is no evidence to sustain the Commission's findings of fact. The majorities' opinions from the Commission and here are erroneous as a matter of law. I respectfully dissent.

## I. Standard of Review

The Commission is the sole judge of issues of fact. *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683-84 (1982). The Commission's findings of fact are binding on appeal when supported by competent evidence, *Deese*, 352 N.C. at 116, 530 S.E.2d at 553, and prevail "even though there is evidence that would support a finding [of fact] to the contrary." *Mica Co. v. Board of Education*, 246 N.C. 714, 717, 100 S.E.2d 72, 74 (1957) (citations omitted). The Commission's findings must support its conclusions of law. *Creel v. Town of Dover*, 126 N.C. App. 547, 552, 486 S.E.2d 478, 480 (1997) (citing *Moore v. Davis Auto Service*, 118 N.C. App. 624, 627, 456

**TAYLOR v. CAROLINA REST. GRP., INC.**

[170 N.C. App. 532 (2005)]

S.E.2d 847, 850 (1995)). We review "the Commission's conclusions of law . . . *de novo.*" *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 701 (2004) (citing *Grantham v. R.G. Barry Corp.*, 127 N.C. App. 529, 534, 491 S.E.2d 678, 681 (1997), *disc. rev. denied*, 347 N.C. 671, 500 S.E.2d 86 (1998)). Our *de novo* review also applies to mixed questions of fact and law. *Campbell v. N.C. Dep't of Transport.*, 155 N.C. App. 652, 667, 575 S.E.2d 54, 64, *disc. rev. denied*, 357 N.C. 62, 579 S.E.2d 386 (2003).

## II. *De Novo* Review

Both the opinion and award of the deputy commissioner and Chairman Lattimore's dissenting opinion from the Commission's opinion and award properly found plaintiff's right knee injury was a pre-existing condition "which was aggravated" by the 31 January 2000 accident and is "compensable as a part of that injury." No evidence before the Commission supports a contrary finding or conclusion.

### A. Aggravation of Pre-existing Injury

"An injury by accident arising out of and in the course of employment which accelerates or aggravates a pre-existing disease or infirmity, thus proximately contributing to the . . . disability of the employee, is compensable." Leonard T. Jernigan, *North Carolina Workers' Compensation*, § 12:8, at 138 (4th ed. 2004) (citations omitted). "Because employers must accept employees as they find them, employers can potentially be liable for total disability benefits if an on-the-job injury aggravates or accelerates a pre-existing condition to such an extent that it causes complete disability." *Id.*, § 18:1, at 213 (citations omitted); *Brown v. Family Dollar Distrib. Ctr.*, 129 N.C. App. 361, 364, 499 S.E.2d 197, 199 (1998) ("Our courts have held that when an accident arising out of employment materially accelerates or aggravates a pre-existing condition and proximately contributes to disability, the injury is compensable.") (citing N.C. Gen. Stat. § 97-2 (1991); *Anderson v. Motor Co.*, 233 N.C. 372, 64 S.E.2d 265 (1951); *Buck v. Procter and Gamble Co.*, 52 N.C. App. 88, 278 S.E.2d 268 (1981); and *Wilder v. Barbour Boat Works*, 84 N.C. App. 188, 352 S.E.2d 690 (1987)). Undisputed here is that Richmond Community College was plaintiff's employer at the time her 1994 pre-existing injury was aggravated in January 2000.

Our Supreme Court stated in *Vause v. Equipment Co.*,

[t]he hazards of employment do not have to set in motion the sole causative force of an injury in order to make it compensable. By

the weight of authority it is held that where a workman by reason of constitutional infirmities is predisposed to sustain injuries while engaged in labor, nevertheless the leniency and humanity of the law permit him to recover compensation if the physical aspects of the employment contribute in some reasonable degree to bring about or intensify the condition which renders him susceptible to such accident and consequent injury. But in such case the employment must have some definite, discernible relation to the accident.

233 N.C. 88, 92, 63 S.E.2d 173, 176 (1951) (internal citation and quotation omitted).

In *Hoyle v. Carolina Associated Mills*, this Court stated:

The work-related injury need not be the sole cause of the problems to render an injury compensable. *Kendrick v. City of Greensboro*, 80 N.C. App. 183, 186, 341 S.E.2d 122, 123, *disc. review denied*, 317 N.C. 335, 346 S.E.2d 500 (1986). If the work-related accident "contributed in 'some reasonable degree' " to plaintiff's disability, she is entitled to compensation. *Id.* at 187, 341 S.E.2d at 124. " 'When a pre-existing, non-disabling, non-job-related condition is aggravated or accelerated by an accidental injury arising out of and in the course of employment . . . so that disability results, then the employer must compensate the employee for the entire resulting disability even though it would not have disabled a normal person to that extent.' " *Wilder v. Barbour Boat Works*, 84 N.C. App. 188, 196, 352 S.E.2d 690, 694 (1987) (quoting *Morrison v. Burlington Industries*, 304 N.C. 1, 18, 282 S.E.2d 458, 470 (1981)).

122 N.C. App. 462, 465-66, 470 S.E.2d 357, 359 (1996).

In *Mabe v. Granite Corp.*, the defendant argued certain factors are "beyond the control of an employer and cannot be considered in determining an employee's disability." 15 N.C. App. 253, 256, 189 S.E.2d 804, 807 (1972). This Court responded, "The answer to this is that an employer accepts an employee as he is. If a compensable injury precipitates a latent physical condition, such as heart disease, cancer, back weakness and the like, the entire disability is compensable and no attempt is made to weigh the relative contribution of the accident and the pre-existing condition." *Id.* (citing 2 Larson, Workmen's Compensation Law, § 59.20, p. 88.109).

" 'When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows

from the injury arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct.'" *Roper v. J.P. Stevens & Co.*, 65 N.C. App. 69, 73, 308 S.E.2d 485, 488 (1983) (quotation omitted), *disc. rev. denied*, 310 N.C. 309, 312 S.E.2d 652 (1984).

### B. Analysis

Undisputed evidence from the record shows plaintiff's pre-existing right knee injury was "aggravated" by the 31 January 2000 accident. Plaintiff was working full-time as a custodian for Richmond Community College while undergoing treatment for her right knee. Her position required "climbing stairs, bending, stopping, and pro-longed standing and walking, all of which were in excess of her restrictions." Plaintiff continued working until her accident in January 2000.

The Commission found "plaintiff's condition stabilized until she slipped at work on an ink pen [in June 1997] and suffered a patella sprain to the right knee" and after treatment "the right knee pain resolved . . . ." However, after the 31 January 2000 accident, the Commission found: (1) "[p]laintiff used her left leg to compensate for her right knee, and would use her left leg to pull up her right leg when climbing stairs;" (2) "plaintiff could not favor her right knee by rely-ing on her left knee;" and (3) "Dr. Oakley, the treating physician for both knee injuries, . . . opined that the [January] 2000 left knee injury was the straw that broke . . . that put her over the edge."

Plaintiff admitted the aggravation of injuries to her right knee after the 31 January 2000 accident: "Well, it's got worse. It's got more painful from—I guess, from having to switch back and forth on legs like I have to do." She testified her right knee worsened after the surgery on her left knee: "[I]t wasn't long after the surgery because I was having to use . . . my right knee more, you know. Like I said, to walk and all, I was putting more weight on it, and . . . *that's when my [right] knee really started giving me a lot more problems.*" (empha-sis supplied).

Undisputed evidence shows plaintiff's previously existing right knee injury was "materially accelerated and aggravated" by the 31 January 2000 accident while employed at Richmond Community College. *Brown*, 129 N.C. App. at 364, 499 S.E.2d at 199. Prior to the accident, plaintiff performed her employment duties and exceeded the work restrictions imposed by her physicians. Plaintiff was unable

to physically compensate for her injured right knee as a "natural consequence" of her accident at Richmond Community College, and its condition worsened. *See Roper*, 65 N.C. App. at 73, 308 S.E.2d at 488 ("When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct."). Richmond Community College "accepted" plaintiff with her pre-existing right knee injury. As her employer at that time, Richmond Community College is liable for the "aggravation" of plaintiff's pre-existing injury.

Plaintiff relinquished all her claims against Richmond Community College pursuant to the settlement agreement approved by the Commission. As Chairman Lattimore's dissenting opinion noted, "[p]laintiff should not be permitted to settle with Richmond Community College, then recover from defendants in this case that which would be paid by Richmond Community College but for the settlement agreement."

### III.  Conclusion

Plaintiff's accident on 31 January 2000 is "compensable," but not by defendants at bar. The injury to her left knee in 2000 "aggravated" her pre-existing right knee injury from 1994, "accelerated" its failure, and led to her eventual total disability. Jernigan, *supra* § 12:8, at 138. Additional injury to plaintiff's right knee was a "natural consequence" of the accident in the course of her employment with Richmond Community College. *Roper*, 65 N.C. App. at 73, 308 S.E.2d at 488. As her employer, Richmond Community College accepted plaintiff as it found her with the previously injured right knee. The majorities' opinions both at the Commission and at this Court erroneously places liability on defendants at bar. That liability rightfully and legally belongs to Richmond Community College. I respectfully dissent.